1
2
3
4
5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

6

7
JOSE FRANCISCO GARCIA,

8
                    Plaintiff,

9
v.

10

11
DERRICK PEREZ and
MIKE MOREHOUSE,

12
                    Defendants.

13

Case No.  2:12-CV-3114-LRS


ORDER GRANTING IN PART AND
DENYING IN PART
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

14
        This matter comes before the Court on remand from the Ninth Circuit and

15
upon the Defendants' Motion for Summary Judgment (**ECF Nos. 37, 76**).  Following

16
the remand, counsel entered a notice of appearance on behalf of the Plaintiff.  The

17
18
Court has allowed the parties additional time to file supplemental briefs and to

19
conduct some discovery.  The matter having been fully briefed, the Court now

20
GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary

21
Judgment.

22

23
        Plaintiff Jose Francisco Garcia was a pretrial detainee at all relevant times in

24
this case, who was held at the Toppenish City Jail.  Plaintiff alleges civil rights

25
violations including excessive use of force and denial of medical care against two

26

ORDER – 1

individual Defendants, who are law enforcement employees of the City of Toppenish. Defendants seek summary judgment in their favor on all claims and their qualified immunity defense.

This court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.    FACTS

On March 17, 2011, Plaintiff was a 30-year old pretrial detainee in the Toppenish City Jail after having been arrested on a warrant for failure to appear on a misdemeanor charge of third degree theft.   Sometime after 10:00 p.m., Plaintiff was on the phone speaking with his wife.  Meanwhile, Defendant Mike Morehouse, an employee of the City of Toppenish, was the only officer on duty at the jail. Morehouse was "locking the inmates down for the evening," and turned off all the jail cell lights and jell phones.  (ECF No. 39, Morehouse ¶ 6). As a result, Plaintiff's phone call was abruptly interrupted and disconnected.  Frustrated and "a little upset," as he walked toward his bunk in his cell housing 8 to 10 inmates, Plaintiff admits he "yelled out loud" (ECF No. 101) "mathafucker" (ECF No. 11) at the same time Morehouse was walking down the jail corridor by his cell (ECF No. 44).

Both Plaintiff and Defendant rely upon video surveillance footage capturing the incident in the corridor over the course of the following one minute.  The video shows that at 10:19 p.m., Morehouse walked down the jail corridor (six feet in width) to the front of Plaintiff's cell and stood outside it.  According to Morehouse, he

observed Plaintiff "agitated and yelling profanities in the cell." (ECF No. 39, Morehouse ¶7). Morehouse claims he heard Plaintiff yell "That motherfucker should give me some warning." (ECF No. 39, Morehouse ¶ 6). Morehouse contends he asked what Plaintiff was complaining about and Plaintiff responded, "No one is talking to you motherfucker." (ECF No. 39 at 7). Plaintiff denies this allegation and alleges that it was Morehouse who became agitated and "Morehouse kept talking to me and accusing me of cussing at him." (ECF No. 101 at 3) Plaintiff claims he told Morehouse, "look I was not talking to you" (ECF No. 44 at1).

According to Morehouse, upon seeing Plaintiff agitated, Morehouse planned to move him "to allow him to calm down and avoid agitation amongst the other inmates." (ECF No. 38 at 3). It is undisputed a handcuff slot in the jail cell door was not utilized. Instead, Morehouse claims he twice ordered Plaintiff to exit the cell and Plaintiff responded "he was not going to exit the cell" and told Morehouse to "fuck off." Plaintiff claims Morehouse opened the cell door and ordered him to approach, and he complied. (ECF No. 101 at 3).

Video surveillance footage shows that at 22:19:43, Morehouse unlocked the cell door and pulled his taser gun and pointed it at Plaintiff through the bars of the cell. According to Morehouse, he warned Plaintiff that if he did not exit the cell he would be tased. (ECF No. 39 at 8). Morehouse claims that Plaintiff "again stated he was not going to exit the cell." Plaintiff claims that he told Morehouse that there

was no need to point the Taser at him because he would go wherever Morehouse ordered him to go. (ECF No. 101 at 3).  Morehouse claims he gave him a fourth order to exit the cell to avoid being tased and then Plaintiff "reluctantly exited the cell." (ECF No. 39, Morehouse ¶ 8).

Video surveillance shows Plaintiff exiting the cell at 22:19:51 and Morehouse ordered Plaintiff to his knees.  Morehouse claims that before complying, Plaintiff partially turned toward him and stated he wasn't going to get on his knees. (ECF No. 39, Morehouse ¶ 9).  Morehouse claims he again warned Plaintiff he would be tased if he did not do as ordered, and then Plaintiff "hesitated, but eventually went to his knees." (ECF No. 39, Morehouse ¶ 9.).  Plaintiff admits that as he began to get on his knees he stated "this shit is unnecessary. Just tell me where to go." (ECF No. 44 at 1).  Morehouse ordered Plaintiff to put his hands on top of his head and cross his ankles.  It is undisputed Plaintiff complied with these orders.

Next, Defendant Derrick Perez arrived on scene. Perez, an officer with the City of Toppenish, was ending his patrol shift and claims he heard "loud commands coming from the jail." He asserts that he "entered the jail in an attempt to secure [Plaintiff] with handcuffs." (ECF NO. 38 at 4).  Perez approached Plaintiff from the front and claims he instructed Plaintiff to "get on the ground," but Plaintiff failed to comply.  (ECF No. 39 at 7).  Perez grabbed Plaintiff's right hand from the top of his head, twisted the arm straight out, and pushed Plaintiff down to the floor.  Defendant

ORDER – 4

Perez claims that when he "attempted to grab and arm bar Plaintiff and take him to the ground for purposes of handcuffing, Plaintiff Garcia *pulled away* and resisted those attempts." (ECF NO. 37 at 16). Perez also claims Plaintiff turned toward him with his right fist clenched (ECF No. 39 at 10) and had "jerked [his fist] back in a pre-striking manner." At this point, Perez asserts he recognized Plaintiff was a "very strong individual" (ECF No. 39 at 8) and claims he felt "threatened" and in "immediate[] danger of being assaulted." (ECF No. 37 at 17). Plaintiff denies resisting, but admits he "flinched" because the arm lock was painful and tried to brace against hitting the concrete floor face first by extending his left hand. (ECF No. 101 at 5).

At approximately 22:20:20, Perez threw two right-hand punches at Plaintiff's head but missed and pushed Plaintiff into the cell's bars. When it appeared to Perez that Plaintiff attempted to get up, he kicked his right foot to Plaintiff's upper chest or neck, losing his shoe in the process. At 22:20:24, Perez appears to right-hand punch Plaintiff in the ribs, then knee-drop Plaintiff in the left shoulder/neck area. Perez forced the left side of Plaintiff's face into the concrete floor. Perez claims Plaintiff continued to resist while on the floor, a claim Plaintiff denies. (ECF No. 101 at 5).

While on the floor, Perez claims Plaintiff refused orders to put his hands behind his back and was "actively pulling his arms away." (ECF No. 39 at 10).

ORDER – 5

Perez then grabbed Plaintiff's left arm and twisted it behind him, which according to Plaintiff caused him extreme pain and injury. Morehouse then used his taser to apply a five-second drive stun[1] to Plaintiff's right leg. By 22:21:07, Plaintiff was handcuffed. He was picked up and escorted away by Morehouse to a holding cell.

Paramedics were called and examined Plaintiff. Shortly after midnight on March 18, 2011, Morehouse took Plaintiff to the Toppenish Community Hospital where he was examined and had x-rays taken of his skull. A hospital physician provided a "medical exam clearance." (ECF No. 77). Plaintiff claims Morehouse was in a hurry to get back (ECF No. 44 at 2) and "demanded that hospital staff clear Plaintiff for return to the jail" without awaiting interpretation results of the x-rays or treatment. Morehouse claims that he transported Plaintiff back "once all x-rays came back negative." (ECF No. 39 at 15).

The medical record furnished by Defendants for the March 18, 2011 hospital visit does not resolve this factual dispute as it contains only partial discharge instructions and billing information. (ECF No. 77, Ex. D). It does not contain x-ray

---

[1] "When a taser is used in drivestun mode, the operator removes the dart cartridge and pushes two electrode contacts located on the front of the taser directly against the victim. In this mode, the taser delivers an electric shock to the victim, but it does not cause an override of the victim's central nervous system as it does in dart-mode." *Mattos v. Agarano*, 6661 F.3d 433 (9ᵗʰ Cir. 2011).

ORDER – 6

interpretation results, "Physician Documentation," or "Nurse Documentation," as exists for Plaintiff's longer visit on March 25, 2011. *Compare*, ECF No. 77, Ex. E.

Plaintiff claims that:

After I was returned to the jail, I complained to jail officials every day about the intense pain in my shoulder area and in my face. In addition, I submitted at least 3 and probably 4 written kites or complaints requesting medical care. I was not provided any medical care. I was provided ice packs …I was also given ibuprofen but was not returned to the hospital for proper and reasonable treatment even though I continued to request it.

(ECF No. 101 at 7).

On March 25, 2011, Officer Mario Valenzuela contacted Plaintiff regarding his written request for medical treatment. Sergeant Paul Logan directed Officer Valenzuela to take Plaintiff back to the hospital emergency room for further treatment. At this 2-hour visit, CT scans of his head and facial bones were taken. Plaintiff claims he was informed of the results of his x-rays and scans (ECF No. 44 at 2). The CT scan revealed nasal bone fractures. (ECF No. 77). Plaintiff was diagnosed with a face contusion, an acute nasal bone fracture and sprained left shoulder. He was prescribed Vicodin for pain relief.

Morehouse cited Plaintiff for the incident on March 17, 2011. On August 24, 2011, Plaintiff was convicted by guilty plea with obstructing a police officer in violation of Washington state law and prohibited jail conduct in violation of the Toppenish Municipal Code.

///

ORDER – 7

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving

ORDER – 8

party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co.*, 475 U.S. at 585–87.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record ... or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 585. "[T]he requirement is that there be no genuine issue of material fact.... Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis in original). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[ ]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

///

///

///

ORDER – 9

## III. ANALYSIS

### A. *Heck v. Humphrey*

The Court's previous rejection (*see* ECF No. 50) of the Defendants' argument based upon *Heck v. Humphrey*, 512 U.S. 477 (1994), was affirmed by the Ninth Circuit (*see* ECF No. 69). Accordingly, the Court's prior ruling on this issue still stands and is not addressed again herein.

### B. Excessive Force Claims Against Defendants Perez and Morehouse in their Individual Capacities

To prevail on an excessive force claim, a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable. *Kinglsey v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). "Objective reasonableness turns on the 'facts and circumstances of each particular case.' " *Id*. at 2473 (quoting *Graham*, 490 U.S. at 396). It ignores the officers' intentions and "the 20/20 vision of hindsight" and requires the trial court to "account for the 'legitimate interests that stem from the government's need to manage the facility in which the individual is detained.' " *Id*. (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979). This analysis "appropriately defer[s] to 'policies and practices that in the judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.' "*Id*. It also accounts for the fact that "officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, rapidly

ORDER – 10

evolving—about the amount of force that is necessary in a particular situation."

*Graham*, 490 U.S. at 396-97; *Kinglsey*, 135 S.Ct. at 2474.

The objective-reasonableness standard cannot be mechanically applied. But in *Kingsley*, the Supreme Court offered these considerations for trial courts examining the reasonableness of force used on a pretrial detainee:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* (citing *Graham*, 490 U.S. at 396).

In their briefing on the summary judgment motion, both parties refer extensively to a surveillance video of the corridor in which the incident occurred. Defendants maintain that the video shows no use of excessive force. But Plaintiff maintains in his declaration and the declaration of his expert, that the video shows he was stationary, not violent and not resisting, when Perez kicked, pushed, punched, twisted his arms, and slammed his head into the concrete, and Morehouse tased him. Although the video is factually relevant, it is not determinative of whether the officer's conduct was objectively reasonable. Viewing the evidence in the record in the light most favorable to Plaintiff, the Court finds that there is a material factual dispute as to whether Defendants used an amount of force against Plaintiff that was objectively unreasonable in violation of the Fourteenth Amendment's Due Process

ORDER – 11

Clause. *See e.g., Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011)(officers used excessive force in deployment of drive-stun tasing of pregnant suspect who actively resisted arrest, but posed no immediate threat to the safety of officers or others); *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir.2010)(refusal to release arms for handcuffing did not justify deploying a taser when the subject was unarmed and there is little risk he could access a weapon); *Estate of Armstrong ex rel Armstrong v. Village of Pinehurst*, 810 f.3d 892 (4th Cir. 2016)(" A taser, like 'a gun, a baton, ... or other weapon,'…is expected to inflict pain or injury when deployed. It, therefore, may only be deployed when a police officer is confronted with an exigency that creates an immediate safety risk and that is reasonably likely to be cured by using the taser. The subject of a seizure does not create such a risk simply because he is doing something that can be characterized as resistance-even when that resistance includes physically preventing an officer's manipulations of his body.").

*Drummond v. City of Anaheim*, 343 F.3d 1052, 1058–60 (officers used excessive force in kneeling and pressing their weight against the torso and neck of a suspect who was handcuffed and lying on the ground without offering resistance); *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir.2007) (officers used excessive force when they punched plaintiff and used a gang tackle and hobble restraints to take him into custody).

*///*

Defendants claim they are entitled to qualified immunity on the excessive force claims. "Qualified immunity shields federal and state officials from money damages unless a plaintiff" shows '(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Here, material questions of fact preclude the Court from ruling on qualified immunity. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir.2007) (declining to rule on qualified immunity because of disputed facts). Where, as here, there are disputed facts necessary to decide the issue of qualified immunity, summary judgment is appropriate only if Defendants are entitled to qualified immunity on the facts as alleged by the non-moving party. *Id*. "Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir.2002).

According to Plaintiff's version of events, he was not actively resisting, but rather compliant and on his knees and then lying on the floor, when he was punched, kicked, pushed, slammed to the ground, and tased. With regard to Defendant Perez's use of force, the Court need look no further than the holding of *Graham v. Connor*,

ORDER – 13

490 U.S. 386 (1989) that the force is only justified when there is a need for force. *Blankenhorn*, 485 F.3d 463 (9th Cir. 2007). It is beyond dispute, that the right to be free from excessive force has long been clearly established.

With regard to the use of the taser, the law in the Ninth Circuit regarding tasers was still developing when the events occurred in early 2011. However, by March 2011, Morehouse should have known that the use of a taser could constitute unreasonable force, and that officers may not use force against a suspect who is not a threat. *See e.g., Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010); *see also, Bailey v. Chelan County*, 2012 WL 4756068 (E.D.Wash. Oct. 5, 2012)(denying summary judgment on qualified immunity where Plaintiff claimed he was tasered and slammed to the ground in December 2011 while not actively resisting); *Lerma v. City of Nogales*, 2014 WL 4954421 (D.Az., Sept. 30, 2014)(denying summary judgment on qualified immunity where Plaintiff alleged in July 2011 he was tasered when he was not actively resisting and/or was handcuffed and/or had indicated that he would comply).

For the foregoing reasons, summary judgment on Plaintiff's individual claims of excessive force against the Defendants are denied.

**C. Denial of Medical Care against Defendants Perez and Morehouse**

A pretrial detainee's right to receive adequate medical care is derived from the Fourteenth Amendment's due process clause, rather than the Eighth Amendment's

protection against cruel and unusual punishment. *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002). Nevertheless, courts apply the Eighth Amendment standards in cases involving pretrial detainees. *See id.*

To establish an Eighth Amendment violation related to medical care, an inmate must prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1241 (9th Cir.2010). Prison officials may be deemed to have been deliberately indifferent to an inmate's serious medical needs "when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir.2002) (quoted sources and internal quotation marks omitted). However, a prison official may be held liable "only if he knows that inmates face a substantial risk of serious harm ***and disregards that risk by failing to take reasonable measures to abate it***." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)(emphasis added). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' " *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (*quoting Estelle*, 429 U.S. at 104), overruled on *other grounds by WMX Techs. v. Miller*, 104 F.3d 1133 (9th Cir.1997).

Plaintiff's pleadings, allegations, and evidence fall far short of alleging facts sufficient to establish deliberate indifference on the part of the Defendants identified

ORDER – 15

in the pleadings.    There are no allegations or evidence suggesting personal involvement of Perez in any conduct that would evince a wanton disregard for serious medical needs. Personal involvement is an essential element in any action for damages under 42 U.S.C. § 1983. As for Morehouse, Plaintiff alleges he was delayed medical treatment from March 18, 2011 when Morehouse "demanded" that hospital staff clear Plaintiff for return to the jail and left the hospital before x-ray results were communicated to Plaintiff.  Plaintiff's suggestion that the CT Scan was also performed on March 18, 2011 is belied by the medical evidence showing it was ordered on March 27, 2011.  It is undisputed that Plaintiff was examined and medically cleared on March 18, 2011 by Dr. Miguel Fernandez.  Nothing in the record explains what the x-ray results were, when they were available, or how the allegedly hurried evaluation was the result of deliberate indifference or was the cause of harm.    At best Plaintiff's facts against Morehouse might support a claim of negligence; however, negligent denial of medical care will not support a claim under section 1983.  Plaintiff's deliberate indifference claim is vague, conclusory and lacks an arguable basis for a jury to find either Defendant knew of a serious medical need and deliberately disregarded it. Summary judgment is granted to Defendants on Plaintiff's Eighth Amendment medical claim.

**D. Official Capacity Claims under § 1983**

Plaintiff's Complaint states he is suing Defendants in their official capacities,

ORDER – 16

as well as their individual capacities.  (ECF No. 11 at 8).  Officially capacity suits, "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Kentucky v. Graham*, 437 U.S. 159, 166 (1985). Therefore, to the extent that Plaintiff is alleging official capacity claims, the real party interest is the City of Toppenish. However, Plaintiff's Complaint does not identify the City of Toppenish as a Defendant and does not specify an unconstitutional policy or custom.  Defendants' Motion for Summary Judgment requests dismissal of the case, but it fails to seek dismissal of any claim asserted against Defendants in their official capacities. If Plaintiff wishes to proceed against the Defendants in their official capacity, he shall file an Amended Complaint **within 30 days** and specify an unconstitutional policy or custom, (2) allege facts supporting the existence of that policy or custom, and (3) explain how that policy or custom was the "moving force" behind his injury.

## IV. CONCLUSION

    **ACCORDINGLY, IT IS HEREBY ORDERED:**

    1.  Defendants' Motion for Summary Judgment (**ECF Nos. 37 and 76**) is GRANTED IN PART and DENIED IN PART as explained in this order, leaving only: (1) the portion of Plaintiff's first cause of action alleging a § 1983 excessive force claim against Defendants Perez and Morehouse; and (2) Plaintiff's official-capacity claims.

ORDER – 17

2.  Plaintiff is granted leave to file an Amended Complaint within 30 DAYS to allege facts supporting his official capacity claims, should he wish to pursue them. Plaintiff shall NOT include the dismissed claim for denial of medical care in the amended pleading.  Failure to amend will be construed as consent to the dismissal of the official capacity claims.

3.  This matter will be scheduled for a Telephonic Scheduling Conference by separate Notice.

DATED this 16th day of March, 2016.

*s/Lonny R. Suko*

_____
LONNY R. SUKO
SENIOR U.S. DISTRICT COURT JUDGE

ORDER – 18